REM INDUSTRIES, INC. (Formerly Hy-Lan Furniture Company, Inc.), Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rem Industries, Inc. v. Commissioner
Docket No. 5621-66.
United States Tax Court
T.C. Memo 1974-123; 1974 Tax Ct. Memo LEXIS 196; 33 T.C.M. (CCH) 581; T.C.M. (RIA) 74123; May 13, 1974, Filed. *196 Corporation A was merged into corporation B a few weeks prior to the close of the taxable year of corporation A. On its books and records and in the filing of the corporation tax return for corporation A, corporation B elected to treat the merger as having taken effect as of the close of the taxable year of corporation A. HELD: That the respondent properly determined the tax liability of corporation A on the basis of such election and in conformity with the return as filed. HELD, FURTHER: That in determining the taxable income of corporation A for such taxable year, the closing inventory could not be valued on a basis different from the method of accounting used in the valuation of its opening inventory. J. Elton Mitchiner, for the petitioner. Thomas F. Niles, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: [1] *197 The respondent determined a deficiency of $113,761.09 in the income tax liability of Hy-Lan Furniture Co., a dissolved corporation, for its taxable year ended September 30, 1961. The notice of deficiency was addressed to the petitioner as successor once removed of that corporation. The issues presented for our decision are (1) whether the statutory notice of deficiency issued by the respondent related to an incorrect taxable period, thereby depriving the Tax Court of jurisdiction to determine a deficiency in this matter; and (2) whether the value of closing inventory for the taxable year at issue was understated by $214,004.48. Other issues in this case have been disposed of by concessions of the parties. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. The petitioner is a corporation organized under the laws of the State of Delaware. It is the successor, by name change, to Hy-Lan Furniture Company, Inc., which, in turn, is the successor, by name change, to Titan Research & Development Corp. of America, which, in turn, is the successor, by merger, to Hy-Lan Furniture Company. At the date the petitioner filed its petition in this case, it *198 maintained its principal office at 50 Broadway, New York, New York. Hy-Lan Furniture Company ("Old Hy-Lan") was incorporated in North Carolina on September 21, 1933, and its Federal income tax returns for the taxable years prior to October 1, 1960, were filed on an accrual basis with a fiscal year ending September 30. At all times pertinent to this case, Paul W. Hake was president and Thomas R. Earnest was vice president of Old Hy-Lan. Prior to and on August 2, 1961, the only authorized capital stock of Old Hy-Lan was 2,000 shares of $100 par common stock, 529 shares of which were held by Old Hy-Lan as treasury stock, leaving 1,471 shares outstanding. The 529 shares of treasury stock had a cost or asset value on the books of Old Hy-Lan of $291,800. Titan Research & Development Corp. of America ("Titan") was incorporated pursuant to the laws of Delaware in 1954. At all times prior to August 1961, Titan was a shell corporation, with no assets, liabilities, or issued and outstanding capital stock. From the date of its corporate charter, Titan had carried on no operations of any kind, business or otherwise, and it kept its status as a corporation only by the payment of applicable *199 license fees due to the State of Delaware. On August 1, 1961, the pro forma stockholders of Titan held a meeting for the sole intended purpose of activating Titan so that Titan could purchase the capital stock of Old Hy-Lan. At this meeting, Henry M. Rem was named president of Titan, and other individuals were named as officers. A resolution was passed to open an initial bank account. Another resolution was passed authorizing the issuance of 2,000 shares of $1 par value common stock and 980 shares of $100 par value preferred stock. Also at this meeting, it was determined to accept a proposal that Mr. Rem buy the authorized common stock of Titan and that Hibriten Furniture Company, a corporation controlled by Mr. Rem (but which was independent of all other parties and legal entities involved in this case) buy the authorized preferred stock of Titan. On August 2 and 3, 1961, Titan agreed to purchase all the outstanding stock of Old Hy-Lan (1,471 shares) for $1,092,217.50. Payment was made on August 18, 1961. Old Hy-Lan was thereupon merged into Titan. Articles of Merger were filed in the States of North Carolina and Delaware. Under the Articles of Merger, Titan was liable for *200 the debts of Old Hy-Lan. Titan, the surviving corporation, changed its name to Hy-Lan Furniture Company, Inc. ("New Hy-Lan"). On August 21, 1961, New Hy-Lan, the surviving corporation, was duly authorized to transact business in the State of North Carolina and continued to operate the same business which Old Hy-Lan had previously operated. For the taxable years ending before October 1, 1960, in valuing its inventory for the purpose of determining the cost of sales, Old Hy-Lan determined the lower of cost or market, as follows: Raw materials and factory supplies
Cost less 1%
Work in process
Selling price less 52%
Finished Goods:
(a) Manufactured for Sears, Roebuck & Company
Selling price less 33-1/3%
(b) Regular stock
Selling price less 33-1/3%
(c) Odd stock, discontinued goods and samples
Selling price less 50%
The ending inventory of Old Hy-Lan on September 30, 1960, based on the above method of valuation, totaled $733,368.07. On September 14, 1961, Alfred W. Dodge, a Certified Public Accountant from Lenoir, North Carolina, was employed to audit the books and records of the company for the period October 1, 1960, through September 30, 1961, and to price the inventory as of September 30, *201 1961, including the physical observation and testing of inventory quantities. Mr. Dodge also had considerable experience in furniture operations. In valuing the inventory of the business as of September 30, 1961, initially Mr. Dodge made a prefatory valuation as follows: Inventory
Prefatory Valuation Basis
Amount of Valuation Raw materials and factory supplies
Cost less 1%
$261,706.26
Work in process
Selling price less 52%
102,882.48
Finished goods:
(a) Manufactured for Sears, Roebuck & Company
Selling price less 25%
58,150.93
(b) Regular stock
Selling price less 33-1/3%
431,652.43
(c) Odd stock, discontinued goods and samples
Selling price less 50%
22,755.58
Total Prefatory Valuation
$877,147.68
In the prefatory valuation, Mr. Dodge valued finished goods manufactured for Sears, Roebuck & Company at selling price less 25 percent rather than selling price less 33-1/3 percent, because of a change in the contract with Sears occurring between September 30, 1960, and September 30, 1961, which provided that all goods manufactured for Sears must be accepted by Sears, thus precluding possible close-out prices for such goods. At the request of his employer, Mr. Dodge made further adjustments in the valuation *202 of the inventory, to reflect the following: Inventory
Valuation Amount Per Prior Valuation Basis
Additional Reductions
Percentage Used For Additional Reductions
Net Inventory Valuation Raw materials and factory supplies:
(a) Lumber & squares
$168,907.90
$ 50,000.00
Approx. 30%
$118,907.90
(b) Factory supplies previously considered inventoriable
5,000.00
5,000.00
100%
-0-
(c) Other raw materials and factory supplies
87,798.36
-0-
87,798.36
$261,706.26
$ 55,000.00
$206,706.26
Work in process
102,882.48
30,864.74
30%
72,017.74
Finished goods:
(a) Manufactured for Sears, Roebuck & Company
58,150.93
14,537.74
25%
43,613.19
(b) Regular stock
431,652.43
107,913.11
25%
323,739.32
(c) Odd stock, discontinued goods and samples
22,755.58
5,688.89
25%
17,066.69
TOTALS
$877,147.68
$214,004.48
$663,143.20 On June 18, 1962, the petitioner filed a corporation income tax return in the name of "Hy-Lan Furniture Company, Inc." for the 12-month period October 1, 1960 through September 30, 1961, with the district director of internal revenue, Greensboro, North Carolina. Said return bore the Employer Identification Number 56-0273870, which has been identified as the identification number of Old Hy-Lan. The return was signed by Thomas R. Earnest, *203 vice president of Old Hy-Lan. Presumably the return reflected the operations of the business from October 1, 1960 to September 30, 1961. The return did not disclose the fact of any merger and from the standpoint of the respondent it purported to be a return of one and the same taxpayer for the fiscal year ending September 30, 1961. In said return, the opening inventory on October 1, 1960, was shown as $733,368.07, the same amount shown as the closing inventory on the return filed for the fiscal year ending September 30, 1960. The return also shows a closing inventory as of September 30, 1961, totaling $663,143.20 and in the same amounts computed by Mr. Dodge after making the adjustments referred to above. The return did not state that the method of valuing the September 30, 1961 inventory was changed from the method consistently used in valuing the opening October 1, 1960 inventory and the opening and closing inventories for the taxable years prior to October 1, 1960. In 1962, New Hy-Lan changed its period of accounting to the fiscal year ending August 31, and filed a return covering the period October 1, 1961, through August 31, 1962. The fiscal year was changed because it *204 was thought inventories would be lower on August 31, and because August 31 would coincide with the last day of the fiscal year of another corporation controlled by the same interests. In the return for the fiscal year ending August 31, 1962, the date of incorporation of the company is listed as October 1, 1961, and the balance sheet indicates that the return is an "initial return." The return does not show any income or any deficit to any prior period. In addition, the return states that there was no earned surplus or undivided profits. Capital stock of the corporation is listed as $98,000 of preferred stock and $2,000 of common stock. No amount is listed for an opening inventory on October 1, 1961. The depreciation schedule shows no depreciable assets to have been acquired by the petitioner prior to October 1, 1961. The return further shows that the assets previously depreciated by Old Hy-Lan were acquired by the petitioner on October 1, 1961. On August 4, 1964, the petitioner and Unagusta Manufacturing Corporation, a North Carolina corporation, entered into an agreement providing for the purchase by Unagusta of New Hy-Lan's inventory. On October 22, 1964, the petitioner changed *205 its name to Rem Industries, Inc.
In his statutory notice, dated August 15, 1966, relating to the taxable year ended September 30, 1961 (i.e., October 1, 1960 through September 30, 1961), the respondent asserted against "Rem Industries, Inc. (Formerly Hy-Lan Furniture Company, Inc.)" a deficiency of $113,761.09. Under section (a) of his "Explanation of Adjustments," the respondent determined that the value of the inventory on September 30, 1961, was $877,147,68 and not $663,143,20, as reported. The statutory notice states that the inventory was "understated" by $214,004.48. OPINION At the outset the petitioner challenges the jurisdiction of this Court on the basis that the notice of deficiency extends beyond the effective date of the merger whereby Old Hy-Lan ceased to exist. Petitioner further contends that the closing inventory as of September 30, 1961, as shown in the return filed for the period from October 1, 1960 to September 30, 1961, was properly valued to reflect the lower of cost or market. With respect to the question of jurisdiction, the facts are that the stock of Old Hy-Lan was acquired by Titan on or about August 18, 1961. Old Hy-Lan was thereupon merged into Titan, *206 and the name of the surviving corporation was changed to New Hy-Lan. Irrespective of the fact that the merger was effected under state law on or about August 18, 1961, in filing the corporation income tax return of Old Hy-Lan for the fiscal year beginning October 1, 1960, the petitioner elected to treat the merger as having been effected for tax purposes as of September 30, 1961. A return was filed for the 12-months period ended September 30, 1961, as the return of a single taxpayer. The return did not disclose the facts with respect to the merger. In fact, in light of the evidence in this case, the conclusion is inescapable that the return was prepared with the intent that it constitute the return of a single taxpayer for a full taxable year, notwithstanding that the petitioner well knew that if the merger was deemed to have been effected as of August 18, 1961, separate returns should have been filed for the period up to that date and for the period subsequent to that date. Whatever period is included in the notice, it is the same period that the petitioner elected to include in the preparation of the return. Having elected to file a return on the basis of a 12-months period, *207 with the obvious intent to mislead the respondent, the petitioner has no basis for challenging the validity of the notice of deficiency. [2]Union Bleachery v. Commissioner, 97 F.2d 226 (C.A. 4, 1938). Accordingly, it is our opinion that the statutory notice of deficiency in the instant case is to be treated as relating to Old Hy-Lan's tax liability for the taxable year ended September 30, 1961. [3] As such, the notice was properly addressed to the petitioner as the successor by merger. Under the applicable laws of both North Carolina and Delaware, the liability of a successor *208 corporation for the debts of its predecessor is plainly spelled out by statute. See N.C. Gen. State. sec. 55-110 (1965), and Del. Code Ann. tit. 8, sec. 253 (1953). The petitioner is not a transferee, but is successor by operation of law and primarily liable for any deficiency of Old Hy-Lan. Alaska Salmon Co., 39 B.T.A. 445 (1939). There remains for our decision the substantive issue of whether the petitioner properly valued the closing inventory of Old Hy-Lan as of September 30, 1961. Respondent asserts that the change made by petitioner in valuing the closing inventory of Old Hy-Lan was an alteration in the method of accounting, done without the prior consent of the Commissioner as required under section 1.446-1(e) (2), Income Tax Regs.[4] He further determined that such change was not only inconsistent with Old Hy-Lan's prior method of valuing its inventory but was also not a clear reflection of the income of Old Hy-Lan for its taxable year ending September 30, 1961. See section 446(b) and section 1.446-1(a) (2), Income Tax Regs. He maintains that to obtain a clear and proper reflection of income for the year in question, the closing inventory must be valued by the same method *209 as was used in valuing the opening inventory, such method having been consistently used to value inventories in prior taxable years. Petitioner, on the other hand, argues that by virtue of the merger of Old Hy-Lan into itself on August 18, 1961, it had attained the status of a new taxpayer. As such, it possessed the right to adopt its own method of valuing the closing inventory as of September 30, 1961. See section 1.446-1(e) (1), Income Tax Regs.The position of petitioner might well have found support had it filed a return for the short period from August 18, 1961, the date of the merger, to the end of the fiscal year on September 30, 1961. See section 443(a) (2). [5] As discussed earlier, however, the petitioner chose instead *210 to file a return in the name of Old Hy-Lan for the full 12 months, October 1, 1960 to September 30, 1961, electing to treat the merger as having an effective date as of October 1, 1961. In view of this fact, petitioner's right to use a new method of accounting to value its inventory as a new taxpayer arises only as of that date. We find no basis upon which to justify the change in method used by the petitioner to value the closing inventory of Old Hy-Lan, which is admittedly inconsistent with that company's prior valuation method. We are in full accord with respondent's determination that this change in method does not result in a clear reflection of that company's income for the taxable year in question. Moreover, no prior approval for such change was ever obtained from the Commissioner as required by the regulations under section 446. However, consistency also requires that the Sears inventory be valued at the selling price less 33-1/3 percent, not less 25 percent as determined by respondent. In all other respects, respondent's determination on this issue is sustained. Decision will be entered under Rule 155. Footnotes
1. Pursuant to a Notice of Reassignment sent to counsel for the parties, and to which no objections were filed, this case was reassigned on December 3, 1973, from Judge Austin Hoyt, who heard the case, to Judge William H. Quealy↩ for disposition. 2. Not only did petitioner knowingly elect to report the operations of Old Hy-Lan for the full 12-month period ending September 30, 1961, but notwithstanding the opportunity to rectify the alleged error, petitioner has failed to do so. This Court entered an Order on December 6, 1973, affording the parties an opportunity to submit further evidence in order to provide a "cut-off" point for the merger. The petitioner has not availed itself of that opportunity. ↩
3. If the return is not treated as the return of Old Hy-Lan, then no return was filed and the statute of limitations for the year in issue would remain open. ↩
4. A change by a taxpayer in valuing his inventory is recognized as a change in the taxpayer's method of accounting. Sec. 1.446-1(e) (2) (ii) (a), Income Tax Regs.↩
5. To determine the opening inventory, however, petitioner would be required to allocate, on the basis of its fair market value, a portion of the purchase price paid for the stock of Old Hy-Lan to the inventory it acquired as a result of the subsequent merger. See Yoc Heating Corp., 61 T.C. 168↩ (1973).